UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL CROSBY, on behalf of himself and all others similarly situated, | Docket No.: 1:25-CV-9286-ER |
| Plaintiff, | |
| -against- | |
| HP, INC. | |
| Defendant. | |

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Joseph & Norinsberg, PLLC
Robert Schonfeld, Esq.
825 Third Avenue, Suite 2100
New York, New York 10022

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**FACTS** ...................................................................................................................................... 2

**STANDARDS OF REVIEW** ................................................................................................... 3

**ARGUMENT** ............................................................................................................................ 4

    **a)**   **Venue is proper in the Southern District of New York.** ................................................. 4

    **b)**   **This Court should not transfer this case to the Northern District of California.** ....... 7

    **c)**   **Plaintiff can seek declaratory relief.** ........................................................................... 12

    **CONCLUSION** ................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bates v. C&S Adjusters, Inc.,* 980 F.2d 865 (2d Cir. 1992) ........................................ 6

*Campbell v. Gallery Model Homes, Inc.,* 2024 U.S. Dist.LEXIS  43503 (S.D.N.Y. 2024)............................ 4

*Daniel v. Am. Bd. Of Emergency Med.,* 428 F.2d 408, 432 (2d Cir. 2005)................................... 3

*Detroit Coffee Co. v. Soup for You LLC,* 2018 WL 941747 (S.D.N.Y. 2018) ............................... 5

*Dicks v. Cooks Junction,*  2023 U.S. Dist. LEXIS 59384 (S.D.N.Y. 2023). ................................... 3

*Fernandez  v. Vanilla Chip, LLC,* 2025 U.S. Dist,. LEXIS 73831 (S.D.N.Y. 2025),.................................... 7

*Leroy v. Great Western United Corp.,* 443 U.S. 173, 183-84 (1979) ......................................... 5

*Luis v. Medley, Inc.,* 2022 U.S. Dist. LEXIS 73987 (S.D.N.Y. 2022 (Roman, J.) )....................................... 4

*Pablo  Star Ltd. v. Welsh Gov't,*, 170 F, Supp. 597 (S.D.N.Y. 2016)........................................ 5

*Paguada v. Wash. Music Sales Ctr. Inc.,* 2022 U.S. Dist. LEXIS 16064 (S.D.N.Y. 2022)........................... 9

*Tole v. Glenn Miller Prods., Inc.*, 2013 U.S. WL 4006134 (S.D.N.Y. 2013) ...............................11

*Toro v. Cowtown Boot Co.,* 2024 U.S. Dist. LEXIS 174863 (S.D.N.Y. 2024) ............................... 4

*Velazquex v. Don Roberto Jewelers, Inc.,* 2024 U.S. Dist. LEXIS 55367 (S.D.N.Y. 2024)....................... 4

*Weekes v. Outdoor Gear Exch., Inc.,* 2023 U.S. Dist. LEXIS 36905  (S.D.N.Y. 2023) ................................. 7

*Young v. Metro. Learning Inst.,* 2023 U.S. Dist. LEXIS 23206 (S.D.N.Y. 2023) ........................................ 4

**Statutes**

28 U.S.C. Section 1391(b)...........................................................................................5

28 U.S.C. Section 1404(a) ..........................................................................................6

New York City Human Rights Law...............................................................................4

New York State Civil Rights Law .................................................................................4

New York State Human Rights Law .............................................................................4

Title III of the Americans With Disabilities Act...............................................................3

## **PRELIMINARY STATEMENT**

Plaintiff Daniel Crosby ("Crosby") is a legally blind person. He attempted to purchase items from the Defendant HP, Inc. ("HP") website from his assisted living home in New York, New York.   However, various barriers on the site prevented him from making his purchases. He commenced this action under Title III of the Americans With Disabilities Act ("ADA") and several New York State and New York City anti-discrimination laws.

HP does not dispute that its website has barriers preventing legally blind persons like Crosby from having equal access to the site as required by the ADA.  HP also does not dispute his standing to bring this action or argue that this Court does not have jurisdiction over HP or argue that a standalone website like HP is not an "accommodation" covered by Title III of the ADA or argue that this case is moot.  Instead, HP argues that in spite of the fact that Crosby attempted without success to purchase HP products from his home in New York, New York, venue is improper here. HP also argues alternatively that this case should be shipped across the country to San Francisco, which at least two other judges in this District noted in similar cases would "force a partially blind Plaintiff to litigate miles away from her chosen forum."  HP, a multi-billion dollar corporation with offices on at least three continents, even argues that "the relative means" test used in the determination of venue transfer motions favors neither Crosby nor HP.

This Court and five other judges in this District have held in similar cases that venue is proper here, and HP presents no arguments to show that those decisions should be overturned. The tests involved on a venue transfer motion clearly favor Crosby, and HP's attempt to kill this

case by sending it 3,000 miles away from Crosby's home on the hope that the merits are never considered should be summarily rejected.

## FACTS

Plaintiff Crosby is a legally blind person who resides in an assisted living facility for visually impaired individuals in New York, New York. Complaint, pars. 2, 13, 24. He attempted to purchase products from the HP website from his residence in New York, New York. Complaint, par. 25. However, various barriers on the HP website prevented him from purchasing these products. Complaint, pars. 26, 27, 28.

Crosby commenced this action against HP, alleging that its website violated Title III of the ADA, the New York State Human Rights Law, the New York State Civil Rights Law and the New York City Human Rights Law.

HP has moved to dismiss this action on the ground that, in its view, venue is not proper in the Southern District of New York.   Alternatively, HP moves to have the venue of this action transferred to the Northern District of California.   HP also complains that Crosby's "declaratory judgment" cause of action is not really a cause of action, even though declaratory relief is certainly available in this action.

In support of its motion is a declaration by HP's Senior Counsel Brad Hartz, which was executed in Houston, Texas.    Hartz states that the HP Website is hosted on servers located in Virginia.  Hartz aff., par. 8.  Hartz notes that the User Experience Team responsible for preparing the design specifications for the site work out of Spain and Mexico and are managed by HP employees located in Palo Alto, California, Portland, Oregon, and Alaska.   Hartz aff., par. 9. The Hartz affidavit also states there are IT teams performing technical implementation of the

2

User Experience Team's specifications for the site in Texas, California, Colorado and India (Hartz aff., par. 10) and that the employee responsible for insuring HP's compliance with HP's accessibility policies works in the State of Washington.

**STANDARDS OF REVIEW**

With regard to HP's motion to dismiss on the ground of improper venue, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" 28 U.S.C. Section 1391(b). When a plaintiff relies on that statute to defeat a venue challenge, a two-part inquiry is appropriate. *Daniel v. Am. Bd. Of Emergency Med.,* 428 F.2d 408, 432 (2d Cir. 2005). First, a court should identify the nature of its claims and the acts or omissions that the plaintiff alleges give rise to those claims. *Id.* Second,, the court should determine whether a substantial part of those acts or omissions occurred in the district where the suit was filed. *Id.* The burden of proof lies with the plaintiff to show that venue was proper, but the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Dicks v. Cooks Junction,* 2023 U.S. Dist. LEXIS 59384 *6 (S.D.N.Y. 2023).

With regard to HP's motion to transfer venue to the Northern District of California, under 28 U.S.C. Section 1404(a), a district court may transfer a suit to another district where jurisdiction over the defendant could have been obtained at the time the suit was brought and the transfer is in the interest of justice and convenience of the parties and witnesses. The burden of proof rests with the movant to show, by clear and convincing evidence, that the balance of convenience strongly favors the alternate forum and the plaintiff's choice of forum should not be disturbed unless the balance of the factors tips decidedly in favor of a transfer. *Campbell v. Gallery Model Homes, Inc.,* 2024 U.S. Dist. LEXIS 43503 *9-*10 (S.D.N.Y. 2024). A court must first determine whether the suit could have been filed in the proposed forum. If this test is

met, the court considers nine factors: "(1) convenience of witnesses, (2) convenience of the parties, (3) location of relevant documents and the relative ease of access to sources of proof, (4) the locus of the operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the comparative familiarity of each district with the governing law, (8) the weight accorded to plaintiff's choice of forum and (9) judicial economy and the interests of justice." *Weekes v. Outdoor Gear Exch Inc.,* 2023 U.S. Dist. LEXIS 36905 *6 (S.D.N.Y. 2023) (Ramos, J.).

## **ARGUMENT**

### a)  **Venue is proper in the Southern District of New York.**
In *Velazquez  v. Don Roberto Jewelers, Inc.,* 2024 U.S. Dist. LEXIS 55367 *16-*17 (S.D.N.Y. 2024), (Ramos, J.) this Court held in a similar case that a plaintiff's unsuccessful attempt to access a website in this District demonstrated that a substantial part of the acts involved occurred in this District and that  venue was thus  proper in this District.  None of HP's arguments here require a different result in this case.

Five other judges in this District have held the same as this Court in *Velazquez*, and no judge in this District has adopted HP's contrary view.   See, *Dicks v. Cooks Junction,* 2023 U.S. Dist. LEXIS 59384 *14-*15 (S.D.N.Y. 2023) (Liman, J.); *Campbell v. Gallery Model Homes, Inc.,* 2024 U.S. Dist.LEXIS  43503 *11 (S.D.N.Y. 2024) (Torres, J.); *Toro v. Cowtown Boot Co.,* 2024 U.S. Dist. LEXIS 174863 *7-*8 (S.D.N.Y. 2024) (McMahon, J.);   *Luis v. Medley, Inc.,* 2022 U.S. Dist. LEXIS 73987 *2 (S.D.N.Y. 2022 (Roman, J.) ), *Young v. Metro. Learning Inst.,* 2023 U.S. Dist. LEXIS 23206 * 5 fn. 2 (S.D.N.Y. 2023) (Oetken, J.)  Ironically, the two non-ADA website accessibility cases relied upon most by HP at page 5 of its brief for the position that venue was not proper in this District were decided by the same Judge Oetken who found that

venue was proper in this District for a case identical to the instant case.   .Compare *Pablo Star Ltd. v. Welsh Gov't,*, 170 F, Supp.3d  597 (S.D.N.Y. 2016) (Oetken, J.) and  *Detroit Coffee Co. v. Soup for You LLC,* 2018 WL 941747 (S.D.N.Y. 2018) (Oetken, J.).(non-ADA website accessibility cases cited by HP at page 5 of its brief which Judge Oetken found were not appropriately venued in this District) to *Young, supra.* (case identical to the instant case where Judge Oetken found that venue was proper in this District).

HP relies heavily on the argument that based on the Second Circuit's decision in *Daniel v. Am. Bd. Of Emergency Med.,* 428 F.3d 408, 432 (2d Cir. 2005), venue is determined by where the relevant activities of the defendant occurred and that no relevant activities of HP occurred in the Southern District of New York. However, in *Velazquez, supra.,* this Court did consider the *Daniel* decision in its analysis and the holding in *Daniel* does not require such a defendant-centric view of venue as HP advocates.

In *Velazquez*, this Court considered *Daniel*, citing from that decision that a court "should identify the nature of the claims and the acts and omissions that plaintiff alleges give rise to those claims" and should determine "whether a substantial part of those acts or omissions occurred in the district where the suit was filed." *Velazquez, supra.,* at \*15-\*16.  This Court in *Velazquez* held that the purpose of statutorily defined venue is to protect the defendant from having to try a case in an unfair or inconvenient venue. *Id.* at \*16.[1]

---

[1] The case most noted for this position is *Leroy v. Great Western United Corp.,* 443 U.S. 173, 183-84 (1979).   The author of this brief is most familiar with *Leroy* as he wrote an amicus brief on the venue point in that case as a New York State Assistant Attorney General.   *Leroy* involved an attempt by Texas plaintiffs (the Hunt brothers) to challenge the constitutionality of an Idaho statute (identical to a New York statute) in the Northern District of Texas.  Certainly, the situation in this case is quite different from that in *Leroy.*

This Court in *Velazquez* then held that the attempts of the plaintiff there to access the website were the acts that gave rise to his claim, and that a substantial part of those acts occurred in this District. *Id.* at *16-*17. Similarly here, Plaintiff Crosby attempted to access the HP website from his home in New York, New York and encountered and suffered the effects of HP's actions here.in this District.    Consequently, as was the case in *Velazquez,* venue is proper in this District.

HP argues that the events leading to Crosby's inability to access the website occurred outside of this District because HP's website was constructed outside of the District, and under *Daniel*, a court should only focus on the relevant activities of the defendant, not of the plaintiff. HP cites a slew of cases in this District to support its position.  However, none of those cases involved the facts here—a plaintiff in this District being unable to access a website in violation of Title III of the ADA.

As this Court noted in *Velazquez*, the Second Circuit in *Daniel* was concerned about forcing a defendant to try a case in an unfair or inconvenient place.    HP cannot argue that trying a case in New York City is unfair or inconvenient.

Additionally, while the Second Circuit in *Daniel* does cite to an Eighth Circuit opinion stating that " Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff," the *Daniel* decision is not that black and white and cited  favorably  to a relevant decision not much different from the instant case where the Second Circuit held that a case could be brought in the District where the plaintiff was injured.

The case *Daniel* cited to was *Bates v. C&S Adjusters, Inc.,* 980 F.2d 865 (2d Cir. 1992). See 428 F.3d at 433 (*Daniel* citation to *Bates*)  As the *Daniel* court noted in describing *Bates*, the

plaintiff's receipt of a collection notice in the district where he lived  was a substantial part of the events giving rise to a claim "under the Fair Debt Collection Practices Act because the statute seeks to curb the effect on consumers of abusive debt practices like the collection notices sent to the plaintiff." *Id.*  In other words, the Second Circuit in *Daniel* noted with favor its earlier *Bates* decision where the Court had found venue in the District where the plaintiff was injured and not where the offensive notice originated.   Similarly here, the ADA was clearly aimed at combatting website deficiencies like those of the HP website and substantial events thus occurred where the plaintiff was injured.   In  *Fernandez  v. Vanilla Chip, LLC,* 2025 U.S. Dist,. LEXIS 73831 *22 (S.D.N.Y. 2025), this Court noted that "the ADA's 'stated purpose is to provide a clear and comprehensive national mandate to eliminate discrimination against disabled individuals… and to invoke the sweep of congressional authority … to address the major areas of discrimination faced day-to-day by people with disabilities."

In sum, the *Daniel* decision does not robotically state that only the place of the defendant's relevant activities was to be considered and does state that  the place where the plaintiff was injured could constitute the substantiality needed for a particular forum.   Therefore, as HP has not stated any reason why this Court should deviate from its previous decision in *Velazquez*, this Court should continue to hold that venue is proper in this District in unanimous agreement with the other judges in this District who have considered this issue.

**b)  This Court should not transfer this case to the Northern District of California.**
In *Weekes v. Outdoor Gear Exch., Inc.,* 2023 U.S. Dist. LEXIS 36905 *6  (S.D.N.Y. 2023) (Ramos, J.) (a case not cited by HP in its brief), this Court laid out the factors involved in determining whether a case should be transferred to another District.  This Court in *Weekes* held in a case similar to the instant case that  the defendant had not carried its burden of showing that

that case should be transferred to District of Vermont.   Similarly here, HP has not carried its burden of establishing that this case should be transferred across the continent to California.

Crosby's choice of this District should not be disturbed unless the balance of the factors tip decidedly in favor of a transfer. *Campbell, supra.* at *9-*10. If anything, the balance of factors tips in favor of Crosby's chosen forum and not HP's proposed transfer.

There is no dispute that this case could be brought in the Northern District of California. However, as this Court noted in *Weekes*, the court has to consider nine factors on a motion to transfer, those being: (1) convenience of witnesses; (2) convenience of the parties, (3) location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the comparative familiarity of each district with governing law, (8) the weight accorded to plaintiff's choice of forum and (9) judicial economy and the interests of justice. *Id.* at *6   The burden is on HP to establish that venue should be transferred to the Northern District of California. *Id.* at *18.

In *Weekes*, this Court found that the current venue (Southern District of New York) should be maintained.   The Court noted that the locus of facts at issue occurred in this District through the internet and that the plaintiff was a resident of New York. *Id.* at 19.  This Court also found that the financial means factor weighed in favor of keeping the current venue, along comparative familiarity of each district with governing law (New York State and New York City anti-discrimination laws), the weight accorded to plaintiff's choice of forum, and the interest of judicial economy and the interests of justice. *Id.* at *19-*20.  The same factors upon which this Court decided to maintain the plaintiff's chosen forum apply to this case as well and as with *Weekes*, this Court should deny HP's motion to transfer venue to another district..

Turning to HP's arguments in its brief, HP has not demonstrated that the convenience of witnesses favors transferring this case to the Northen District of California.    While the Hartz affidavit cites to numerous HP employees on three continents, four countries, and seven states, as in *Weekes,* the Hartz affidavit does not specifically list any witnesses by their names or what their testimony would be.    See *Weekes, supra.,* at *19. (this Court rejected an affidavit of the moving party on the ground that it did not specifically list any witnesses by their names or what their testimony would be.)  Nor is there any affidavit of any HP employee explaining what disruption to HP's business would occur if this case remained in New York City.    Even assuming that all of the witnesses listed in the Hartz affidavit are relevant, the witnesses from Virginia and Spain live closer to New York City than San Francisco, while New York City and San Francisco are probably equidistant to the witnesses from India and Mexico.    In any event, because of the lack of specificity in the Hartz affidavit, HP has not carried its burden to show that the convenience of witnesses is a factor favoring it.

Moving to the convenience of the parties, certainly New York City is more convenient to Crosby, a partially blind person residing in New York City.    On the other hand, HP has employees throughout the world, all of whom can fly to New York City if necessary.  As the court noted in *Campbell v. Gallery Model Homes,* 2024 U.S. Dist. LEXIS 43503 *9 (S.D.N.Y. 2024), "transferring this action would merely shift the inconvenience from one party to another, and force a…. blind plaintiff to litigate miles away from her chosen burden."  See also, *Paguada v. Wash. Music Sales Ctr. Inc.,* 2022 U.S. Dist. LEXIS 16064 at *1  (S.D.N.Y. 2022).  Therefore, this factor does not favor HP.

The location of relevant documents and the relative ease of access to sources of proof favor neither party.  As HP notes at page 8 of its brief, "modern tools like remote depositions are

an option for him."   Similarly, modern tools are certainly available to allow for the transfer of documents anywhere in the world.

As this Court found in *Weekes,* "the locus of the facts issue occurred in this district through the internet and Weekes is a resident of New York."

HP argues at length that the locus of operative facts is entirely in California because HP's website was designed, built, and managed by HP personnel based there and elsewhere outside New York.  This argument proves too much.  Under HP's logic, no ADA website accessibility case could ever be brought anywhere other than the defendant's home state, no matter where the disabled plaintiff lives and was harmed.  That cannot be the law.  The locus of operative facts in an ADA website accessibility case is not only where the defendant designed its inaccessible website, but also where the plaintiff suffered the effects of that inaccessibility — i.e., where he attempted and failed to access the site.  As this Court held in Velazquez and as five other judges of this District have agreed, Crosby's attempt to access the HP website from his home in New York, New York constitutes a substantial part of the events giving rise to this claim.  HP's reliance on cases involving purely commercial disputes, contract performance, or tortious acts with no consumer-facing harm in this District is misplaced, and those  cases do not govern ADA website accessibility claims where the discriminatory impact is felt at the plaintiff's location *.Weekes, supra.* at *19.   The same finding would apply here to a case identical to *Weekes.*

There is no evidence that there are any unwilling witnesses involved here, so the factor of the availability of process to compel the attendance of unwilling witnesses is not present here. The Hartz affidavit does not list the names of any unwilling witnesses, and the statements of HP at page 7 of its brief  regarding former HP personnel being unwilling to testify in New York are not supported by any evidence.  HP's suggestion that this Court lacks subpoena power over

10

former HP employees is similarly speculative. HP has not identified a single former employee by name, stated where any such person resides, or explained what relevant testimony they would provide. Absent such specificity, this factor cannot weigh in HP's favor. See Weekes, supra., at *19 (rejecting moving party's affidavit for failing to specifically identify witnesses or the substance of their testimony). Moreover, to the extent any former HP employees reside outside the 100-mile subpoena range of both courts, this factor is neutral as to both forums and cannot tip the scales in HP's favor.

HP argues at page 9 of its brief that the relative means factor favors neither party. Crosby is a partially blind person who lives in an assisted living residence in New York City. HP is a multi-billion dollar company with, according to the Hartz affidavit, offices in at least three continents, four countries, and seven states. It is incredulous that HP can even argue that the relative means factor favors neither party.

As this Court held in *Weekes,* because the case involved local New York law, it was more appropriate to keep in this District rather than transfer it to Vermont. *Weekes, supra.* at *19. The same is true in this case, as claims under New York State and New York City anti-discrimination laws are raised here as they were raised in *Weekes*. While HP at page 8 of its brief cites *Tole v. Glenn Miller Prods., Inc.*, 2013 U.S. WL 4006134 (S.D.N.Y. 2013) in opposition, even that case admits that there is a slight tilt in favor of the forum that will interpret the local law of its state.

HP's brief concedes at page 9 of its brief that the plaintiff's choice of forum weighs in favor of keeping the case in the Southern District of New York. HP nonetheless argues that this choice deserves reduced deference because SDNY is allegedly not Crosby's "home forum." This argument is meritless. Crosby resides in an assisted living facility for visually impaired

11

individuals in New York, New York — squarely within the Southern District.  HP offers no authority for the proposition that a plaintiff who lives in this District loses the strong presumption in favor of his chosen forum simply because he resides in an assisted living facility rather than a private home. The cases are clear that a plaintiff's choice of his home forum commands substantial deference and should not be disturbed unless the balance of factors tips decisively in favor of transfer.  HP cannot meet that heavy burden here.  Finally, as this Court held in *Weekes, supra.,* at *20. "in the interest of judicial economy, it would be a burden on the District Court of Vermont to interpret New York law for purposes of resolving this action." The same would be true in this case regarding a foreign state interpreting New York law.

Therefore, HP has not carried its burden of demonstrating that this case should decidedly be transferred to the Northern District of California, and this case should remain in this forum.

### c) Plaintiff can seek declaratory relief.
HP also moves to dismiss the "declaratory relief" cause of action.   However, whether it is alleged as a cause of action or a form of relief sought in the "Wherefore" clause of the Complaint is irrelevant.   Since Crosby can seek declaratory relief no matter how it is framed in the Complaint, HP's motion on this ground is meaningless.

### CONCLUSION

As venue is proper in this District and HP has not carried its burden on demonstrating that this action should be transferred to the Northern District of California, , HP's motions should be denied.

Dated:  New York, Nee York
        February 25, 2026

JOSEPH & NORINSBERG LLC
Attorneys for Plaintiff Daniel Crosby
By: */s/ Robert L. Schonfeld*

12

ROBERT L. SCHONFELD, ESQ.