UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL CROSBY, *on behalf of himself and all others similarly situated*,

Plaintiff,

*– against –*

HP, INC.,

Defendant.

**OPINION & ORDER**

1:25-cv-09286 (ER)

RAMOS, D.J.:

Daniel Crosby, on behalf of himself and all others similarly situated, brings this putative class action against HP, Inc. for violations of Title III of the American Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973, and related New York State and City laws. Doc. 4. Before the Court is HP's motion to dismiss the complaint for improper venue, or alternatively, to transfer this matter to the Northern District of California. Doc. 20 at 6. For the reasons set forth below, the motions are DENIED.

## I. BACKGROUND

### A. Factual Background

The following facts have been taken from the complaint and are presumed true for the purposes of this opinion. *Cavu Releasing, LLC v. Fries*, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005) (motion to dismiss for improper venue); *Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18 Civ. 4459 (PGG), 2019 WL 4727496, at *1 n.1 (S.D.N.Y. Sept. 27, 2019) (motion to transfer). Crosby is a legally blind resident of New York County, New York. Doc. 4 ¶ 24. HP is incorporated in Delaware, with a principal place of business in Palo Alto, California. *Id.* ¶ 7.

Crosby lives in a residential facility for blind and visually impaired individuals and relies on assistive technology, specifically screen-reading software, to independently access the internet. *Id.* ¶ 24. Crosby alleges that he visited HP's website on September 5, 2025, hoping to research and purchase two specific products, as well as to register a previously purchased device, but he encountered "persistent access barriers" that precluded him from navigating the site independently. *Id.* at ¶¶ 5, 25–26. The website had "missing alternative text, empty buttons, broken skip links, unlabeled form fields, and broken ARIA references[1] that rendered key information unreadable by screen reader software." *Id.* ¶ 6. He sought information on these HP products because of HP's reputation for "business-grade performance, sustainability initiatives, and robust warranty offerings." *Id.* ¶ 8.

Crosby attempted to access the website again the following month, on October 3, 2025, to locate warranty information and explore HP's customer support options. *Id.* ¶ 27. Specifically, he sought out the "Help" and "Accessibility" functions of the website to determine whether HP offered accommodations or alternative formats for blind users but was unable to do so because the features were embedded in unlabeled buttons and dynamic menus that his screen reader could not parse. *Id.* Accessibility scans conducted by Crosby's counsel found 49 accessibility errors on the two product pages that Crosby was attempting to reach. *Id.* at ¶ 28. This included 13 broken ARIA references, 10 unlabeled buttons, 7 instances of missing alternative text, and multiple empty form fields. *Id*.

Crosby still intends to purchase an HP device as soon as the website is made accessible to him. *Id.* at ¶ 30. He requires access to HP's warranty registration, support services, and driver downloads to maintain his devices—services that are not reliably

---

[1] Accessible Rich Internet Applications (ARIA) "support javascript generated HTML with semantic meanings to improve the user's experience by, for instance, enabling a button to declare that it will launch a pop-up when pressed." David Allen Larson, *Digital Accessibility and Disability Accommodations in Online Dispute Resolution: ODR for Everyone*, 34 Ohio St. J. on Disp. Resol. 431, 452 (2019).

available through third-party platforms or offline channels. *Id*. Crosby asserts his claims on behalf of a putative class of similarly situated blind consumers who are categorically excluded from accessing both digital and physical services facilitated through HP's website. *Id.*

**B. Procedural Background**

Crosby filed his initial complaint on November 6, 2025, Doc. 1, which, following a clerical error, was re-filed the following day. Doc. 4. The complaint alleged causes of action for discrimination under the ADA and Section 504 of the Rehabilitation Act, as well as analogous New York State and City laws. *Id.* The parties stipulated to the dismissal of the second claim, relating to Section 504 of the Rehabilitation Act, with prejudice, on January 21, 2026. Doc. 17.

HP then filed a motion to dismiss on February 6, 2026, for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or alternatively to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Doc. 19.

## II. THE SOUTHERN DISTRICT OF NEW YORK IS A PROPER VENUE

**A. The Legal Standard**

For venue to be proper, a civil action can be brought in any of the following judicial districts: (1) "a judicial district in which any defendant resides," if they all reside in the same state; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or, if neither (1) nor (2) apply, then (3) "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). A corporate defendant "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

"Once an objection to venue has been raised, the plaintiff bears the burden of establishing that venue is proper." *G.F.C. Fashions, Ltd. V. Goody's Family Clothing, Inc.*, No. 97-civ-0730 (LAP), 1998 WL 78292, at *2 (S.D.N.Y. Feb. 24, 1998) (citing *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320, 321 (S.D.N.Y. 1996); *Sargent v. Budget Rent-A-Car-Corp.*, No. 94-civ-9215 (SHS), 1996 WL 413725, at *3 (S.D.N.Y. July 24, 1996)).

**B. Discussion**

HP has not moved to dismiss this case on grounds of personal jurisdiction. Accordingly, that defense is waived and the Court focuses its analysis on proper venue. *See* Fed. R. Civ. P. 12(h)(1)(B); *see also Streets v. Mangena*, No. 1:23-cv-10648 (AT), 2025 WL 844425, at *4 (S.D.N.Y. Feb. 24, 2025).

To determine if Crosby has met his burden for establishing proper venue, the Court must first "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Daniel v. American Board of Emergency Medicine,* 428 F.3d 408, 432 (2d Cir. 2005). "Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to those claims . . . have occurred in the district in question.'" *Id.* (citing *Gulf Insurance Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

The court in *Daniel* specifically stated that section § 1391(b)(2), which Crosby relies on, "does not *restrict* venue to the district in which 'the most substantial' events or omissions giving rise to a claim occurred." *Id.* (citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (emphasis added)). *Daniel* further states that § 1391(b)(2) "'contemplates that venue can be appropriate in more than one district' and 'permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts.'" *Id.* (quoting *Gulf Insurance Co.*, 417 F.3d at 535).

HP argues that, when determining whether venue is proper, the Court should base its analysis exclusively on the defendant's conduct as established in *Daniel*, which would make venue here improper since the coding and website maintenance takes place in California. Doc. 22 at 8. Further, HP argues that this Court's decision in *Velazquez*, finding that venue was proper where the plaintiff unsuccessfully attempted to access a website, contradicted the Second Circuit in *Daniel* and should therefore be set aside for purposes of this decision. *Id.*; *see Velazquez v. Don Roberto Jewelers, Inc.*, 22-cv-09247 (ER), 2024 WL 131296, at *6 (S.D.N.Y. Mar. 27, 2024).

In response, Crosby claims that *Daniel* does not set out a categorical rule requiring that the place of injury cannot be considered, as evidenced by the five other judges who have issued rulings consistent with *Velazquez* finding the physical location of where the plaintiff was denied access to a website to be proper venue. Doc. 22 at 7–8 (citing *Dicks v. Cooks Junction,* 22-cv-6495 (LJL), 2023 WL 2775830, at *5–6 (S.D.N.Y. April 4, 2023); *Campbell v. Gallery Model Homes, Inc.*, 22-civ-9947 (AT), 2024 WL 1076541, at *5 (S.D.N.Y. Mar. 12, 2024); *Toro v. Cowtown Boot Co.,* No. 23-cv-04451 (CM), 2024 WL 4299020, at *3–4 (S.D.N.Y. Sep. 26, 2024); *Luis v. Medley, Inc.*, 22-cv-02260 (NSR), 2022 WL 1204617, at *1 (S.D.N.Y. Apr. 22, 2022); *Young v. Metropolitan Learning Institute, Inc.,* 22-cv-1722 (JPO), 2023 WL 1928001, at *2 n.2 (S.D.N.Y. Feb. 10, 2023)).

HP argues that pursuant to *Daniel*, the Court should assess "the defendant's conduct alone" when deciding "where a substantial part of the events or omissions took place." Doc. 20 at 8 (citing *Daniel*, 428 F.3d at 432). However, as Crosby notes, *Daniel*'s reliance on *Bates*, in particular, contradicts and undermines this broad argument. Doc. 22 at 9–10.

In *Bates*, the Second Circuit considered whether venue was proper in New York, where the plaintiff received a debt collection notice, but the defendant had mailed the notice to Pennsylvania, which was then forwarded to New York. *Bates*, 980 F.2d at 866.

In its analysis, the Second Circuit noted that Congress adopted the Fair Debt Collection Practices Act (FDCPA) for the purpose of preventing "the harmful effect of abusive debt practices on consumers." *Id.* at 868 (citing 15 U.S.C. § 1692(a)). Because that "harm does not occur until receipt of the collection notice," the Second Circuit held that the receipt of the notice "is a substantial part of the events giving rise to a claim under the FDCPA." *Id.*

In *Daniel*, the Second Circuit made clear that "'[s]ubstantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claim," *Daniel*, 428 F.3d at 433, and that this principle "has informed [their] venue analysis . . . even if [they had] not articulated the substantiality requirement specifically." *Id*. One of the examples the court cited was its decision in *Bates* where the notice was a "substantial part of the events . . . because the statute seeks to curb the effect on consumers of abusive debt practices like the collection notices sent to the plaintiff." *Id*.

Crosby argues that *Bates*'s reasoning related to the FDCPA should be extended to the ADA since the stated purpose of each act is sufficiently analogous. Doc. 22 at 10. The Court agrees.

Congress adopted the ADA to prevent discrimination against people with disabilities. 42 U.S.C. § 12101(b)(4) ("[T]he purpose of this chapter . . . [is] to address the major areas of discrimination faced day-to-day by people with disabilities."). Much like the plaintiff in *Bates*, who was not harmed until he received the collection notice, Crosby was not injured until he attempted and failed to access the website. *Bates*, 980 F.2d at 868. In *Bates*, the violation of the Act turned "not on the collection agency's intent, but on the content of the collection notice" and that the agency "[had] not objected to the assertion of personal jurisdiction," thus the court concluded that the chosen district "would not be unfair." *Id*. Similarly, the alleged ADA violation here turns not on HP's intent but rather on "persistent access barriers that rendered [its web]site unusable,"

which harmed Crosby in this district. Doc. 4 ¶¶ 26–27. As another court has explained, "no putative Title III violation c[an] occur unless, by virtue of [a defendant's] events or omissions, a disabled individual [is] denied the 'full and equal enjoyment' of the website's 'goods, services, facilities, privileges, advantages, or accommodations.'" *Murphy v. Humboldt Clothing Co.*, No. 1:20-CV-58 (SPB), 2021 WL 307541, at *8 (W.D. Pa. Jan. 29, 2021) (quoting 42 U.S.C. § 12182). Because here, "that denial allegedly occurred" when Crosby "was unable to access" the services on HP's website from New York, Crosby's allegations are sufficient to establish venue here. *Id*. Following the rationale of *Daniel*, the Court finds that because of the ADA's purpose, the place where Crosby was denied access to HP's services was in this District.

This conclusion is also supported by other cases in this district, which have typically found that attempted access of commercial websites in the district is sufficient to establish venue. *See Dicks*, 2023 WL 2775830, at *6 (holding that venue was proper because plaintiff attempted to use defendant's website within the district); *Young*, 2023 WL 1928001, at *2 n.2 (observing that venue was proper because plaintiff alleged that he accessed defendant's website within the district); *Luis*, 2022 WL 1204617, at *2 (holding that venue was improper because plaintiff resided in a different district and attempted to access defendant's website from there); *Campbell*, 2024 WL 1076541, at *5 (holding that venue was proper because the plaintiff allegedly attempted to use defendant's website within the district); *Toro*, 2024 WL 4299020, at *3 (holding that venue was proper because plaintiff attempted to access defendant's website within the district).

Though the Court agrees with HP's argument that these ADA cases do not grapple with the defendant-centric language in *Daniel*, Doc. 23 at 3, the Court finds that pursuant to *Bates*, ADA cases, like FDCPA cases, fall under a category of cases where the location of the injury is relevant to establish venue, unlike the injury in *Daniel* and in many cases cited by HP where the claims were not asserted pursuant to the ADA. *See, e.g.*, *Patel v. Clane Gessel Studio*, 22-cv-10964 (GHW) (RFT), 2024 WL 1939307, at *6-7 (S.D.N.Y.

Apr. 18, 2024) (holding that venue was improper because the contract at issue was neither signed nor negotiated in the district); *Lehrer v. J&M Monitoring, Inc.*, 20-cv-6956 (KMK), 2022 WL 2392441, at *9 (S.D.N.Y. July 1, 2022) (holding that venue was improper based on breach of fiduciary duty not extending to this district); *LS Parry, Inc. v. Tepeyac, LLC*., 18-cv-11808 (NSR), 2022 WL 5026589, at *5 (S.D.N.Y. Aug. 25, 2020) (holding that venue was improper due to fraud and breach of contract taking place elsewhere).

HP also relies on *Pablo Star* and *Detroit Coffee* to argue that the availability of a defendant's website in a certain jurisdiction is not sufficient to establish venue. Doc. 20 at 10 (citing *Pablo Star Ltd. v. Welsh Government*, 170 F. Supp. 3d 597, 609 (S.D.N.Y. 2016); *Detroit Coffee Co. v. Soup for You, LLC*, 16-cv-9875 (JPO), 2018 WL 941747, at *4 (S.D.N.Y. Feb. 16, 2018)). But these are both copyright infringement cases, and thus distinguishable for the reasons already explained.

HP also relies on *Poschmann* to argue that venue is improper in an ADA case where "the only connection to the forum district was the plaintiff's act of attempting to access the website from his residence there." Doc. 20 at 11 (citing *Poschmann v Ponte Vedra Corp.*, No. 18- CV-14321 (DMM), 2018 WL 7890201, at *2–3 (S.D. Fla. 2018)). The court in that case found that the Middle District of Florida was better suited for this claim based on the defendants' actions. *Poschmann*, 2018 WL 7890201, at *2. This Court is not persuaded by this out-of-circuit argument and does not apply it here.

For the reasons set forth above, the Court finds that Crosby has met his burden in establishing that this venue is proper.

## III. HP'S MOTION TO TRANSFER IS DENIED

### A. The Legal Standard

For a § 1404(a) motion to transfer, a district court can grant a change of venue "for the convenience of parties and witnesses, in the interest of justice" or if "all parties have consented." 28 U.S.C. § 1404(a).

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). "[T]he venue statute does not require the district court to determine the *best* venue, only a *suitable* one." *Id.* at 106 (citing *Bates*, 980 F.2d at 867). "First, the court must determine whether the suit could have been filed in the proposed forum." *Weekes v. Outdoor Gear Exch., Inc.,* No. 22 CIV. 1283 (ER), 2023 WL 2368989, at *3 (S.D.N.Y. Mar. 6, 2023) (citing *Megna v. Biocomp Laboratories, Inc.*, 220 F. Supp. 3d 496, 497 (S.D.N.Y. Oct. 19, 2016)). If this is met, the court considers nine factors:

> (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice.

*Weekes*, 2023 WL 2368989, at *3 (S.D.N.Y. Mar. 6, 2023) (quoting *Frame v. Whole Foods Mkt., Inc.*, No. 06-civ-7058 (DAB), 2007 WL 2815613, at *4 (S.D.N.Y. Sept. 24, 2007)). Furthermore, one factor is not necessarily dispositive of another, and each factor will vary based on the circumstances of the case. *Smart Skins LLC v. Microsoft Corp.*, No. 14 Civ. 10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015).

When a party requests a transfer, however, "[that party] has the burden of establishing their case." *Weekes*, 2023 WL 2368989, at *2 (S.D.N.Y. Mar. 6, 2023).

**B. Discussion**

HP's headquarters are in the Northern District of California, where HP proposes transferring the case. Doc. 20 at 11. Neither party disputes that venue would be proper in that district. *See* Doc. 22 at 11. Therefore, the Court presumes that step one of the analysis is met.

The Court thus analyzes each factor of the second step of the test.

*1. Convenience of witnesses*

HP argues that this factor favors California since "non-party witnesses are located within or nearer to the Northern District of California." Doc. 20 at 12. "In moving to transfer venue, defendants must identify potential witnesses who would be inconvenienced if the suit were to remain in the forum chosen by the plaintiff, along with a general statement of the substance of the potential witnesses' testimony." *Weekes*, 2023 WL 2368989, at *7 (quoting *Frame v. Whole Foods Market, Inc.*, No. 6-cv-7058 (DAB), 2007 WL 2815613, at *5 (S.D.N.Y. Sep. 24, 2007)).

HP has not submitted a list of potential witnesses who would be inconvenienced by this action remaining in New York. HP mentions a Director of Accessibility who works in Washington State and some management personnel for the User Experience Team that are based in Palo Alto, for which California would be more convenient. Doc. 20 at 12. However, the declaration submitted by Brad Hartz, a Senior Counsel for HP, in support of this motion was itself submitted from Texas, and includes statements indicating that, while some relevant employees are based in the northwest of the country, others are spread across Texas, Alaska, Colorado, Spain, Mexico, and India. Doc. 21.

With no indication as to the relevance of each team member in this action or to the substance of each member's testimony, the Court assumes that this factor is neutral. *See American Empire Surplus Lines Insurance Co. v. J.R. Contracting & Environmental Consulting, Inc.*, 23 civ 4942 (AT), 2023 WL 8650266 (S.D.N.Y. Dec. 14, 2023); *Worldcom Techs., Inc. v. ICC Inteleca Communications, Inc.,* 37 F. Supp. 2d 633, 638 (S.D.N.Y. 1999).

At a minimum, some of HP's witnesses will need to travel, whereas Crosby is in New York. *See CMT USA, Inc. v. Apex Tool Group LLC*, No. 23-cv-07507 (JLR), 2024 WL 342676 at *3 (S.D.N.Y. Jan. 30, 2024) ("[T]he court must consider the convenience of both party and non-party witnesses." (quoting *Martignago v. Merrill Lynch & Co.*, No. 11-cv-03923 (PGG), 2012 WL 112246, at *5 (S.D.N.Y. Jan.12, 2012)).

*2. The convenience of parties*

As described by HP, "neither forum is clearly more convenient for the parties." Doc. 20 at 13. Much like in *Paraguada*, "[t]ransferring this action would 'merely shift[] the inconvenience from one party to another.'" *Paraguada v. Washington Music Sales Center, Inc.*, 21-cv-3014 (ALC), 2022 WL 268860, at *1 (S.D.N.Y. Jan. 28, 2022) (quoting *Access Now, Inc. v. Otter Production, LLC*, 280 F. Supp. 3d 287, 295 (D. Mass. 2017)). This factor is neutral as neither forum is convenient for both parties.

*3. The location of relevant documents and relative ease of access to sources of proof*

In *Chen*, the court found that the "location of relevant documents" factor "is less important 'in an era of electronic documents, easy copying and overnight shipping.'" *Chen v. Arts Nails Putnam Valley, Inc.*, 14-cv-03037 (ALC), 2017 WL 3017712, at *4 (S.D.N.Y. July 14, 2017) (quoting *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008)). In *Chen*, the "operative facts" occurred in the transferee-district, so the court found that the "relevant documents and other bases of proof [were] likely located there." *Id*. Here, HP argues that the evidence would be "located within or nearer to the Northern District of California" because some personnel is located there. Doc. 20 at 12. However, HP fails to identify relevant documents or evidence that would be more easily accessible. In addition, the operative facts alleged in the complaint happened in this district. Thus, the Court finds this factor to be neutral.

*4. Locus of the operative facts*

HP argues that this factor is in its favor because the "[t]he locus of operative facts is the place where those activities occurred," which HP claims is in Palo Alto because "this action concerns HP's design, coding, and maintenance of the website is managed from HP's headquarters in Palo Alto." Doc. 20 at 12. In *Chen*, which HP cites in support, the court found that this factor favored transfer because the "operative facts alleged in the complaint" centered around unpaid wages across three nail salons located in the transferee district. *Chen*, 2017 WL 3017712, at *3. However here, much like in

*Weekes*, the "locus of the facts at issue occurred in this district through the internet and [Crosby] is a resident of New York." *Weekes*, 2023 WL 2368989, at *7.

In addition, as the Court has explained, "a substantial part of the events or omissions giving rise to the claim" occurred in this venue. For these reasons, this factor weighs against transfer.

*5. The availability of process to compel the attendance of unwilling witnesses*

HP claims that "[r]elevant former HP personnel are likely to still reside in and around Palo Alto, within the Northern District of California's subpoena power but beyond this Court's." Doc. 20 at 12. In support of its argument, HP first cites to several cases for the proposition that "'the single most important factor in the analysis of whether a transfer should be granted' is the convenience of party and non-party witnesses." Doc. 20 at 13 (quoting *Jones v. Equifax Information Services LLC*, 25-civ-1535 (GHW) (SLC), 2025 WL 1466898, *4 (S.D.N.Y. May 22, 2025) (quoting *Aerotel, Ltd. v. Sprint Corp*., 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000))). That portion of those opinions, however, refers to the "convenience of witnesses and parties" factor, not the "compelling witnesses" factor.

"This factor requires the Court to consider its 'power to compel attendance of unwilling witnesses, as a district court can only subpoena witnesses within the district or within 100 miles of the [court].'" *Jones*, 2025 WL 1466898, at *5 (S.D.N.Y. May 22, 2025) (quoting *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006)).

As with factor two, the Court cannot weigh this factor because HP has not submitted any evidence that the former employees would be unwilling to appear in this district. *See id*. (noting that courts have found this factor neutral where "[n]either party has submitted affidavits or other evidence suggesting that any prospective non-party witnesses would decline to appear in either district") (quoting *Glotser v. Boardwalk*

*Regency LLC*, 20 Civ. 2654 (JPC) (SLC), 2023 WL 2162062, at *9 (S.D.N.Y. Feb. 22, 2023)); *see also W.P.V. v. United States*, 21 Civ. 4436 (JPC), 2023 WL 1991426, at *6 (S.D.N.Y. Feb. 14, 2023) (finding that in either district, the court could be precluded from calling certain witnesses due to the 100-mile limitation, so "in the absence of affidavits or other evidence suggesting that any prospective non-party witnesses would not appear in either district, this factor is neutral").

Thus, the Court is not persuaded by HP's argument and finds this factor to be neutral.

*6. The relative means of the parties*

For this factor, HP argues that it "is not aware of Plaintiff's means, [but] modern tools like remote depositions are an option for him," Doc. 20 at 13, and that this factor "favors neither forum," *id*. at 14. "[A] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Glotser*, 2023 WL 2162063, at *6 (quoting *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 322, 338 (S.D.N.Y. 2010)). The Court does not have access to either party's financial statements, however, "'the relative means of an individual plaintiff in contrast to a large company clearly favors plaintiff' in the transfer analysis" unless clearly noted otherwise. *Id.* (quoting *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 329 (E.D.N.Y. 2010)). Thus, the Court weighs this factor in favor of Crosby.

*7. The comparative familiarity of each district with the governing law*

HP argues that this factor is neutral because "this Court and the Northern District of California are equally capable of resolving Plaintiff's federal and New York law claims." Doc. 20 at 13 (citing *Tole v. Glenn Miller Productions, Inc.*, No. 12-civ-6660 (NRB), 2013 WL 4006134, at *5 (S.D.N.Y. Aug. 6, 2013)). Contrary to HP's argument, *Tole* also notes that in *Pilevesky v. Suntrust Bank*, the court found that this factor "'weighed slightly in favor of transfer' when the transferee forum's law will govern

dispute, but not[ed] that 'the tilt is slight, because federal courts are deemed capable of applying the substantive law of other states.'" *Id*. (quoting *Pilevesky v. Suntrust Bank*, No. 10 Civ. 2290 (JS) (ETB), 2010 WL 4879006, at *5 (E.D.N.Y. Nov. 22, 2010)). In this case, the governing law includes New York law. Further, in *Weekes*, this Court held that, due to New York law being applied, this factor weighed in favor of maintaining venue here. *Weekes*, 2023 WL 2368989, at *7.

Thus, the Court slightly tilts this factor in favor of maintaining venue.

*8. Plaintiff's choice of forum*

Neither party disputes that this factor weighs in favor of the claim remaining in New York. Doc. 20 at 14; Doc. 22 at 11. HP, however, argues that Crosby's choice of forum should be given "minimal deference" because "the only connection between this action and this forum is the fact that [Crosby] lives in New York and called up the website from his home." Doc. 20 at 14. HP further states that "substantially all of the material events occurred in the Northern District of California." Doc. 23 at 5. Crosby in turn argues that "a plaintiff's choice of his home forum commands substantial deference and should not be disturbed unless the balance of factors tips decisively in favor of transfer." Doc. 22 at 15.

*Butcher*, which HP also cites, held that "[a] plaintiff's choice of forum is generally entitled to considerable weight." *Butcher v. Gerber Products Co.*, 98 Civ. 1819 (RWS), 1998 WL 437150, at *9 (S.D.N.Y. Aug. 3, 1998). "[T]he plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the events allegedly underlying the claim or where the plaintiff is a resident of the forum district." *Id.* Both are true here. Therefore, the Court finds that Crosby's choice of forum is "a decision that is given great weight." *D.H. Blair & Co.*, 462 F.3d at 107 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

This Court already found that a substantial part of the material events occurred in New York, so HP's argument claiming otherwise is irrelevant here, as are *Cower*, *Ramos*

*de Almeida*, and *Ring*, which it cites in support of that argument. Doc. 23 at 5; *see Cower v. Albany Law School*, No. 04 Civ. 0643 (DAB), 2005 WL 1606057, at *4 (S.D.N.Y. July 8, 2005); *Ramos de Almeida v. Powell*, No. 01 CV 11630 (HB), 2002 WL 31834457, at *2 (S.D.N.Y. Dec. 16, 2002); *Ring v. Executive Jet Aviation, Inc.*, No. 01 CIV. 738 (DLC), 2001 WL 492428, at *2 (S.D.N.Y. May 8, 2001).

This factor weighs greatly in favor of maintaining venue.

*9. Judicial economy and the interests of justice*

The Court agrees with HP's claim that "trial would proceed efficiently in either court," as no evidence has been provided by either party to claim otherwise. Doc. 20 at 13.

*10. Balancing the factors*

The Court balances the relevant factors, keeping in mind that the burden to persuade the Court to transfer the case lies with HP. *See id.* at *2.

Factors four, six, seven, and eight all favor maintaining venue in the Southern District of New York. Without additional information, the Court cannot weigh factors one or five in favor of either party. Similarly, the Court finds that factors two, three, and nine are neutral to both parties.

Accordingly, the Court finds that HP did not meet its burden, and concludes that, pursuant to § 1404(a), justice is best served by maintaining this case in the Southern District of New York.

For the reasons set forth above, the Court denies HP's motion to transfer.

## IV. CROSBY CAN SEEK DECLARATORY RELIEF

### A. The Legal Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in Crosby's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or

"threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id*. at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

**B. Discussion**

As his sixth cause of action, Crosby brought a claim for declaratory relief. Doc. 4 ¶¶ 85–87. HP argues that this claim "must be dismissed" for failure to state a claim because the Declaratory Judgment Act "does not create any cause of action." Doc. 20 at 14. Crosby explains that he "can seek declaratory relief no matter how it is framed in the Complaint." Doc. 22 at 15. The Court understands Crosby's claim as seeking relief

based on his substantive discrimination claims. Doc. 4 ¶ 86. The Court will not dismiss this claim because HP does not argue that Crosby has failed to plausibly allege the underlying claims for which he seeks this relief. *See Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 554 F. Supp. 3d 448, 469 (E.D.N.Y. 2021) (declining to dismiss the plaintiff's claim under the Declaratory Judgment Act because the plaintiff sufficiently stated the underlying substantive claims).

## V. CONCLUSION

For the reasons set forth above, HP's motion to dismiss pursuant to Rule 12(b)(3), motion to transfer pursuant to § 1404(a), and motion to dismiss pursuant to Rule 12(b)(6) are DENIED. HP is directed to file an answer to the complaint by August 17, 2026. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 19.

It is SO ORDERED.

Dated: July 27, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.